UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISON

Case No.  17-cv-21433

IRINA ZEVALLOS and DEMA SEOANE, individually
and on behalf of all others similarly situated;

                Plaintiffs,                COLLECTIVE ACTION
                                            REPRESENTATION

    vs.


S M & N HOSPITALITY GROUP, LLC;
PUBBELLY HOSPITALITY GROUP, CO. d/b/a
THE PUBBELLY RESTAURANT GROUP;
PUBBELLY SUSHI, LLC; JOSE MENDIN, individually;
ANDREAS SCHREINER, individually; and
SERGIO NAVARRO, individually

## COLLECTIVE ACTION COMPLAINT

Plaintiffs, Irina Zevallos and Dema Seoane, individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.    This lawsuit seeks to recover minimum wages, overtime wages, and other damages for Plaintiffs and their similarly situated co-workers – servers, bussers, runners, bartenders, and other "Tipped Workers" – who work or have worked at Pubbelly Sushi located at 1424 20th Street, Miami Beach, Florida 33139.

2.    The Pubbelly Restaurant Group formed in 2010 with the opening of the original

Pubbelly Gastropub in Miami Beach, Florida.[1]  A creation of Chef Jose Mendin, Andreas Schreiner, and Sergio Navarro, the Pubbelly brand became an instant hit in the Miami Beach food scene.

3.      In October 2011, the Pubbelly Restaurant Group expanded its presence and opened Pubbelly Sushi next door to the original Pubbelly in Miami Beach, Florida.

4.      Since Pubbelly Sushi's opening, it has received acclaimed reviews for its cuisine and decor.   In this regard, Pubbelly Sushi has received a 4.4 rating from Zagat Magazine, which declared that "every plate is mouthwatering . . . with a focus on 'creative' sushi and 'really good' microbrews and sake . . . mak[ing] this a 'true locals' place in touristy Miami Beach.'"[2]

5.      Pubbelly Sushi's success has led the Pubbelly Restaurant Group to open a second Miami location in the bustling Brickell City Centre located at 701 S. Miami Avenue, Suite 421, Miami, Florida 33131 in 2017, a pop up location in the American Airlines Arena's Dewar's VIP Lounge for the 2016-2017 Miami Heat season, and even an international restaurant located at Plaza Portofino, La Marina de Casa de campo, Dominican Republic in November 2015.[3]

6.      These three Pubbelly Sushi locations, along with other Pubbelly restaurants, are linked together through a central website – www.thepubbellygroup.com.   In this regard, the landing page for Pubbelly Restaurant Group's website provides information of the restaurants' history, and links customers to each of their restaurant locations.   Using this central website, customers can review each restaurants' hours, make reservations, and even book private events.[4] The central website provides customers a hyperlink to Pubbelly Sushi's dedicated micro-site –

---

[1] See Homepage, The Pubbelly Restaurant Group, *available at*
http://www.pubbellygroup.com/www.pubbellygroup.com/THE_PUBBELLY_RESTAURANT_GROUP.html (last accessed Feb. 15, 2017).
[2] Pubbelly Sushi, Zagat Website, *available at* https://www.zagat.com/r/pubbelly-sushi-miami-beach (last accessed Feb. 15, 2017).
[3] See Our Restaurants & Menus, Pubbelly Sushi, *available at* http://pubbellysushi.us/ (last accessed Feb. 15, 2017).
[4] http://thepubbellygroup.com/

www.pubbellysushi.us.

7.      Defendants have been part of a single integrated enterprise that has jointly employed Plaintiffs and other Tipped Workers. Defendants have maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including the ability to hire, fire, and discipline them.

8.      At all times relevant, Defendants paid Plaintiffs and others similarly situated tipped workers at the "tipped" minimum wage rate.

9.      Defendants, however, have not satisfied the strict requirements under the FLSA that would allow them to pay Tipped Workers this reduced minimum wage (i.e. - take a "tip credit").

10.      Defendants failed to notify Plaintiffs and similarly situated Tipped Workers of the tip credit provisions of the FLSA, or of their intent to apply a tip credit to their wages.

11.      Defendants also maintained a policy and practice requiring Plaintiffs and similarly situated Tipped Workers to engage in a tip distribution scheme wherein they must share a daily portion of their total tips with individuals not eligible to receive tips, namely, sushi chefs and dishwashers.

12.      Individuals employed as sushi chefs are responsible for preparing and rolling sushi, and do not have interaction with customers.  In this regard, sushi chefs do not wait on customers, take customer orders, or deliver food or beverages to customers.  As a result, sushi chefs at Pubbelly Sushi are not entitled to share tips under the FLSA.

13.      Individuals employed as dishwashers are responsible for washing dishes and polishing glasses in the kitchen area of the restaurant.  Dishwashers do not have interaction with customers, do not wait on customers, take customer orders, bus or clean customer tables, or

deliver food or beverages to customers.

14.     Pubbelly Sushi also maintained a policy and practice whereby it applied automatic gratuity to large parties.

15.     Despite this policy and practice, Pubbelly Sushi failed to take this automatic gratuity into account when calculating Tipped Workers' overtime rates of pay.

16.     Defendants also maintain a policy and practice where which Tipped Workers are required to purchase uniforms required for this employment with Defendants.  In this regard, Defendants require Tipped Workers to pay approximately $20 per polo shirt and $60 per long sleeve shirt that featured the company logo.

17.     Defendants also maintained a policy and practice whereby they take unlawful deductions from Tipped Workers' compensation.  In this regard, Defendants required Tipped Workers to pay all or a portion of customers' bills when customers walked out of the restaurant without paying for their meals, commonly referred to as a "customer walkout."

18.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former Tipped Workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawfully earned wages.

## THE PARTIES

### Plaintiffs

**Irina Zevallos**

19.     Zevallos is an adult individual who is a resident of Miami-Dade County, Florida.

20.     Zevallos has been employed by Defendants at Pubbelly Sushi from in or around August 2015 to the present as a server.

21.     Zevallos is a covered employee within the meaning of the FLSA.

22.     A written consent form for Zevallos is being filed contemporaneously with this Complaint.

**Dema Seoane**

23.     Seoane is an adult individual who is a resident of Broward County, Florida.

24.     Seoane has been employed by Defendants at Pubbelly Sushi from in or around 2014 to the present as a server.

25.     Seoane is a covered employee within the meaning of the FLSA.

26.     A written consent form for Seoane is being filed contemporaneously with this Complaint.

**<u>Defendants</u>**

27.     Defendants Pubbelly Hospitality Group, Co., S M & N Hospitality Group, LLC, Pubbelly Sushi, LLC; Jose Mendin; Andreas Schreiner; and Sergio Navarro have jointly employed Plaintiffs and similarly situated employees at all times relevant.

28.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

29.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA.

**S M & N HOSPITALITY GROUP, LLC**

30.     Together with the other Defendants, S M & N Hospitality Group, LLC ("S M & N Hospitality") has owned and operated Pubbelly Sushi during the relevant time period.

31.     S M & N Hospitality is a domestic limited liability corporation organized and existing under the laws of Florida.  It lists its principal address as 1410 20th Street, Suite 219, Miami Beach, Florida 33139, the same building that houses Pubbelly Sushi.   From 2011 to 2014, S M & N Hospitality was listed as an authorized person in the annual corporate filings of Pubbelly Sushi LLC.

32.     S M & N Hospitality is owned, operated, and managed by co-defendants Mendin, Schreiner, and Navarro.

33.     At all relevant times, S M & N Hospitality has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

34.     S M & N Hospitality applies the same employment policies, practices, and procedures to all Tipped Workers at Pubbelly Sushi, including policies, practices, and procedures with respect to payment of minimum wages.

35.     Upon information and belief, at all relevant times Pubbelly Sushi has had an annual gross volume of sales in excess of $500,000.

**Pubbelly Hospitality Group, Co.**

36.     Together with the other Defendants, Pubbelly Hospitality Group, Co. ("Pubbelly Hospitality") has owned and operated Pubbelly Sushi during the relevant time period.

37.     Pubbelly Hospitality is a domestic corporation organized and existing under the laws of Florida.  It lists 1410 20th Street, Suite 219, Miami Beach, Florida 33139 as its principal place of business, the same building that houses Pubbelly Sushi.

38.     Pubbelly Hospitality is owned, operated, and managed by co-defendants Mendin, Schreiner, and Navarro.

39.     Based on information and belief, Pubbelly Hospitality Group is the parent corporation that does business as "The Pubbelly Restaurant Group."   As a parent corporation,

Pubbelly Hospitality Group owns, manages, and oversees all Pubbelly restaurants, including Pubbelly Sushi.

40. Based on information and belief, Pubbelly Hospitality Group owns and operates the restaurants' central website, www.thepubbellygroup.com, which provides information about the restaurants, the company's history, and allows customers to book reservations and events.

41. At all relevant times, Pubbelly Hospitality Group has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

42. Pubbelly Hospitality Group applies the same employment policies, practices, and procedures to all Tipped Workers at Pubbelly Sushi, including policies, practices, and procedures with respect to payment of minimum wages.

43. Upon information and belief, at all relevant times Pubbelly Sushi has had an annual gross volume of sales in excess of $500,000.

**Pubbelly Sushi, LLC**

44. Together with the other Defendants, Pubbelly Sushi, LLC has owned and operated Pubbelly Sushi during the relevant time period.

45. Pubbelly Sushi, LLC is a domestic limited liability corporation organized and existing under the laws of Florida. It lists 1422 20th Street, Miami Beach, Florida 33139 as its principal place of business, the same building that houses Pubbelly Sushi. It lists 1410 20th Street, Suite 219, Miami Beach, Florida 33139 as its mailing address.

46. Pubbelly Sushi, LLC is owned, operated, and managed by co-defendants Mendin, Schreiner, and Navarro.

47. Pubbelly Sushi, LLC is listed as the licensee under Pubbelly Sushi's liquor license on file with the Florida Department of Business & Professional Regulation.

48.     Plaintiffs received pay statements that listed Pubbelly Sushi, LLC as the payor, with the address of 1424 20ᵗʰ Street, Miami Beach, Florida 33139.

49.     At all relevant times, Pubbelly Sushi, LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

50.     Pubbelly Sushi, LLC applies the same employment policies, practices, and procedures to all Tipped Workers at Pubbelly Sushi, including policies, practices, and procedures with respect to payment of minimum wages.

51.     Upon information and belief, at all relevant times Pubbelly Sushi, LLC has had an annual gross volume of sales in excess of $500,000.

**Jose Mendin**

52.     Upon information and belief, Jose Mendin ("Mendin") is a resident of the State of Florida.

53.     At all relevant times, Mendin has been a co-owner and co-operator of the Pubbelly restaurants, including Pubbelly Sushi.  In this regard, Pubbelly Hospitality Group's central website specifically lists Mendin as one of the principals of the restaurant group, and provides his biographical information, identifying him as a "founding partner" and describes how he and co-defendants Schreiner and Navarro opened and expanded the Pubbelly restaurants within the relevant time period.[5]

54.     According to records filed with the Florida Division of Corporations, Mendin is listed as an authorized member of S M & N Hospitality, Pubbelly Hospitality, Pubbelly Sushi, LLC, among other related Pubbelly corporations.

---

[5] http://thepubbellygroup.com/chef-jose-mendin/

55.     Mendin maintains a direct and significant management role in all Pubbelly restaurants, including Pubbelly Sushi.

56.     At all relevant times, Mendin has had the power over payroll decisions at Pubbelly Sushi, including the power to retain time and/or wage records.

57.     At all relevant times, Mendin has been actively involved in managing the day to day operations of Pubbelly Sushi.

58.     At all relevant times Mendin has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees at Pubbelly Sushi.

59.     At all relevant times, Mendin has had the power to transfer the assets and/or liabilities of the Pubbelly Sushi.

60.     At all relevant times, Mendin has had the power the declare bankruptcy on behalf of Pubbelly Sushi.

61.     At all relevant times, Mendin has had the power to enter into contracts on behalf of Pubbelly Sushi.

62.     At all relevant times, Mendin has had the power to close, shut down, and/or sell Pubbelly Sushi.

63.     Mendin is a covered employer within the meaning of the FLSA and the FMWA, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

**Andreas Schreiner**

64.     Upon information and belief, Andreas Schreiner ("Schreiner") is a resident of the State of Florida.

65.     At all relevant times, Schreiner has been a co-owner and co-operator of the Pubbelly restaurants, including Pubbelly Sushi.   In this regard, Pubbelly Hospitality Group's central website specifically lists Schreiner as one of the principals of the restaurant group, and provides his biographical information, identifying him as a "founding partner" and "managing director" of the restaurants.   Furthermore, this biography states that "As Founding Partner and Managing Director, Schreiner wears a multitude of hats, overseeing day-to-day operations . . . human resources, acting as restaurant manager and whatever else may be required of him at the time."[6]

66.     According to records filed with the Florida Division of Corporations, Schreiner is listed as an authorized member of S M & N Hospitality, Pubbelly Hospitality, Pubbelly Sushi, LLC, among other related Pubbelly corporations.

67.     Schreiner maintains a direct and significant management role in all Pubbelly restaurants, including Pubbelly Sushi.

68.     At all relevant times, Schreiner has had the power over payroll decisions at Pubbelly Sushi, including the power to retain time and/or wage records.

69.     At all relevant times, Schreiner has been actively involved in managing the day to day operations of Pubbelly Sushi.

70.     At all relevant times Schreiner has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at Pubbelly Sushi.

71.     At all relevant times, Schreiner has had the power to transfer the assets and/or liabilities of Pubbelly Sushi.

72.     At all relevant times, Schreiner has had the power the declare bankruptcy on behalf of Pubbelly Sushi.

---

[6] See Chef Andreas Schreiner, Pubbelly Boys, available at http://www.pubbellyboys.com/index.php/chef-andreas-schreiner/ (last accessed Feb. 27, 2017).

73.     At all relevant times, Schreiner has had the power to enter into contracts on behalf of Pubbelly Sushi.

74.     At all relevant times, Schreiner has had the power to close, shut down, and/or sell Pubbelly Sushi.

75.     Schreiner is a covered employer within the meaning of the FLSA and the FMWA, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Sergio Navarro**

76.     Upon information and belief, Sergio Navarro ("Navarro") is a resident of the State of Florida.

77.     At all relevant times, Navarro has been a co-owner and co-operator of the Pubbelly restaurants, including Pubbelly Sushi.   In this regard, Pubbelly Hospitality Group's central website specifically lists Navarro as one of the principals of the restaurant group, and provides his biographical information, identifying him as a "founding partner" and describes how he and co-defendants Mendin and Schreiner opened and expanded the Pubbelly restaurants within the relevant time period.[7]

78.     According to records filed with the Florida Division of Corporations, Navarro is listed as an authorized member of S M & N Hospitality, Pubbelly Hospitality, Pubbelly Sushi, LLC, among other related Pubbelly corporations.

79.     Navarro maintains a direct and significant management role in all Pubbelly restaurants, including Pubbelly Sushi.

---

[7] Sergio Navarro, Pubbelly Group, available at http://thepubbellygroup.com/sergio-navarro/ (last accessed Feb. 17, 2017).

80.     At all relevant times, Navarro has had the power over payroll decisions at Pubbelly Sushi, including the power to retain time and/or wage records.

81.     At all relevant times, Navarro has been actively involved in managing the day to day operations of Pubbelly Sushi.

82.     At all relevant times Navarro has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at Pubbelly Sushi.

83.     At all relevant times, Navarro has had the power to transfer the assets and/or liabilities of the Pubbelly Sushi.

84.     At all relevant times, Navarro has had the power the declare bankruptcy on behalf of Pubbelly Sushi.

85.     At all relevant times, Navarro has had the power to enter into contracts on behalf of Pubbelly Sushi.

86.     At all relevant times, Navarro has had the power to close, shut down, and/or sell Pubbelly Sushi.

87.     Navarro is a covered employer within the meaning of the FLSA and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**JURISDICTION AND VENUE**

88.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337.

89.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

90.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims

occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

91.     Plaintiffs bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly situated persons who work or have worked as Tipped Workers at Pubbelly Sushi, who elect to opt-in to this action (the "FLSA Collective").

92.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective.

93.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid the minimum wage for all hours worked up to 40 per workweek and premium overtime compensation for all hours worked beyond 40 per workweek.

94.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

95.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

> (a) willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, minimum wages for all hours worked up to 40 per workweek and premium overtime wages for all hours worked in excess of 40 hours per workweek; and

> (b) willfully failing to record all of the time that their employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

96.     Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective minimum wage for all of the hours they worked up to 40 per workweek and overtime premiums for all hours worked in excess of 40 per workweek.

97.     There are many similarly situated current and former Tipped Workers who have been denied minimum wage and overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

### PLAINTIFFS' FACTUAL ALLEGATIONS

98.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Irina Zevallos**

99.     During her employment, Zevallos generally worked the following scheduled hours, unless she missed time for vacation, sick days, and/or holidays or obtained additional shifts:

(a) 3 days per week, consisting of dinner shifts, for an approximate average of 24-30 hours per week.

100.     Throughout her employment, Defendants applied a tip credit towards the minimum wage rate paid to Zevallos for work performed.  Defendants failed to properly notify Zevallos of the tip credit provisions of the FLSA, or of their intent to apply a tip credit to her wages.

101.     Defendants' mandatory tip pooling arrangement at Pubbelly Sushi allocated a portion of Zevallos' tips to employees who are in positions that are not entitled to tips under the FLSA, including, but not limited to, sushi chefs and dishwashers.

102. Individuals employed as sushi chefs are responsible for preparing and rolling sushi. Sushi chefs do not have interaction with customers. In that regard, sushi chefs do not wait on customers, take customer orders, or deliver food or beverages to customers. As a result, sushi chefs at Pubbelly Sushi are not entitled to share tips under the FLSA.

103. Individuals employed as dishwashers are responsible for washing dishes and polishing glassware. Dishwashers are located away from the dining area, outside of the view of customers. Dishwashers do not have interaction with customers, do not wait on customers, do not take customer orders, and do not deliver food or beverages to customers. As a result, dishwashers at Pubbelly Sushi are not entitled to share tips under the FLSA.

**Dema Seoane**

104. During her employment, Seoane generally worked the following scheduled hours, unless she missed time for vacation, sick days, and/or holidays or obtained additional shifts:

    (a) From the start of her employment to the present, between 3 to 4 double shifts and 1 dinner shift per week, for an approximate average of 40 to 45 hours per week.

105. Throughout her employment, Defendants applied a tip credit towards the minimum wage rate paid to Seoane for work performed. Defendants failed to properly notify Seoane of the tip credit provisions of the FLSA or of their intent to apply a tip credit to her wages.

106. Defendants did not take into account automatic gratuity added to large parties when calculating Seoane's overtime rate of pay.

107.     Defendants' mandatory tip pooling arrangement at Pubbelly Sushi allocated a portion of Seoane's tips to employees who are in positions that are not entitled to tips under the FLSA, including, but not limited to, sushi chefs and dishwashers.

108.     Individuals employed as sushi chefs are responsible for preparing and rolling sushi.  Sushi chefs do not have interaction with customers.  In that regard, sushi chefs do not wait on customers, take customer orders, or deliver food or beverages to customers.  As a result, sushi chefs at Pubbelly Sushi are not entitled to share tips under the FLSA.

109.     Individuals employed as dishwashers are responsible for washing dishes and polishing glassware.  Dishwashers are located away from the dining area, outside of the view of customers.  Dishwashers do not have interaction with customers, do not wait on customers, do not take customer orders, and do not deliver food or beverages to customers.  As a result, dishwashers at Pubbelly Sushi are not entitled to share tips under the FLSA.

110.     Defendants required Seoane to wear a uniform consisting of a long sleeve shirt and polo shirt featuring the Pubbelly Sushi logo.  Defendants charged Seoane approximately $60 for the long sleeve shirt, and $20 per polo shirt necessary for her employment.

111.     Defendants made deductions from Seoane's compensation for reasons including, but not limited to, customer walkouts.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

112.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

113.     At all times relevant, Plaintiffs and the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the

meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

114.    At all times relevant, Plaintiffs and the FLSA Collective were or have been employees within the meaning of 29 U.S.C §§ 201 *et seq.*

115.    At all times relevant, Defendants have been employers of Plaintiffs and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C §§ 201 *et seq.*

116.    At all times relevant, Defendants have been required to pay directly to Plaintiffs and the FLSA Collective the full minimum wage rate for all hours worked.

117.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants have failed to inform Plaintiffs and the FLSA Collective of the provisions of subsection 203(m) of the FLSA.

118.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants distributed a portion of Plaintiffs' and the FLSA Collective's tips to employees who do not "customarily and regularly" receive tips, namely, sushi chefs and dishwashers.

119.    Defendants required Plaintiffs and the FLSA Collective to purchase uniforms consisting of long sleeve and polo shirts featuring the Pubbelly Sushi name and logo necessary for their employment.  The costs of these uniforms purchased by Plaintiffs and the FLSA Collective resulted in them being paid less than the full minimum wage as required by the FLSA, 29 U.S.C. § 201 *et seq*.

120.    Defendants also required Plaintiffs and the FLSA Collective to pay for all or a

portion of customer walkouts, which prevented them from retaining all their tips or resulted in Plaintiffs and the FLSA Collective being paid less than the full minimum wage rate, in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

121.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### SECOND CAUSE OF ACTION
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff Seoane and the FLSA Collective)**

122.    Plaintiff Seoane, on behalf of herself and the FLSA Collective, realleges and incorporates by reference all allegations in all preceding paragraphs.

123.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff Seoane and the FLSA Collective.

124.    Plaintiff Seoane and the FLSA Collective worked in excess of forty hours during some workweeks in the relevant time period.

125.    Defendants failed to pay Plaintiff Seoane and the FLSA Collective one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek.

126.    Defendants also failed to include automatic gratuities in Tipped Workers' regular rate of pay, thus leading to a miscalculation of the overtime rate.

127.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

128. As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Tipped Workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Pubbelly Sushi. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid minimum wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C. Reasonable attorneys' fees and costs of the action; and

D. Such other relief as this Court shall deem just and proper.

Dated:      New York, New York
           April 17, 2017

Respectfully submitted,


 /s/ Armando A. Ortiz          
 Armando A. Ortiz


**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer, *Pro Hac Motion Forthcoming*
Armando A. Ortiz (FBN: 0102778)
28 Liberty 30th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and*
*the Putative Collective*

## FAIR LABOR STANDARDS ACT CONSENT

1.     I consent to be a party plaintiff in a lawsuit against Pubbelly Sushi and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.     By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

*Irina Zevallos*
Irina Zevallos (Feb 15, 2017)

---
Signature


Irina Zevallos

---
Full Legal Name (Print)

## FAIR LABOR STANDARDS ACT CONSENT

1.     I consent to be a party plaintiff in a lawsuit against PUBBELLY SUSHI and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.     By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

*Dema D Seoane*
Dema D Seoane (Feb 21 2017)

Signature


Dema D Seoane

Full Legal Name (Print)